Dean ROBINSON, Kathryn Robinson, Webster Hardware, Inc., a Missouri corporation, Appellants,

v.

Mark LINOMAZ, Meyer Group, Inc., Sanus Health Plan, Inc., Appellees.

No. 94–2835.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1995.

Decided June 23, 1995.

Howard Wittner, St. Louis, MO, argued (Vanessa C. Antoniou, on the brief), for appellants.

Mark G. Arnold, St. Louis, MO, argued (Alene V. Haskell, Paul J. Seele, Robert Vanetta and Don Sherman, on the brief), for appellees.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Dean and Kathryn Robinson, husband and wife, and Webster Hardware, Inc., a Missouri Corporation (collectively referred to as appellants), appeal from a final order entered in the United States District Court[1] for the Eastern District of Missouri dismissing their complaint as preempted under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. For reversal, appellants argue that the district court erred in dismissing their complaint because (1) the Robinsons' purchase of an insurance policy did not create an "employee welfare benefit plan" (EWBP) as defined by ERISA, (2) the Robinsons, as sole shareholders in the corporation, were not "participants" in an EWBP and therefore proper parties to bring an action under ERISA, (3) the absence of an identifiable fiduciary makes preemption inappropriate, and (4) the termination of benefits does not "relate to" an "employee benefit plan." For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND

Dean and Kathryn Robinson are the president and vice-president of Webster Hardware, Inc. ("Webster"). They are also its only shareholders. Appellee Sanus Health Plan, Inc., ("Sanus"), operates a Health Maintenance Organization (HMO). Appellee Mark Linomaz is an insurance agent employed by Appellee Meyer Group, Inc. Linomaz arranged for Webster to contract with Sanus to provide health insurance for Webster's employees. In July 1988, Webster applied for group health insurance with Sanus. The agreement provided that Webster was the "group" purchasing the health insurance. The agreement also incorporated a Group Membership Service Agreement (GMSA) which contemplated that the group would pay the premiums. No coverage would be provided unless the group paid the initial premium. The Robinsons have never disputed that Webster purchased the plan and paid this initial premium.

The beneficiaries of the plan included the Robinsons, their children, and one other, unrelated, common law employee of Webster, Richard Cassani. The Robinsons alleged that provision of coverage to the unrelated employee was a condition of Sanus's provision of the group policy. No employee was eligible for coverage unless he or she was an active, full-time employee of the group. Moreover, coverage would terminate if the employee ceased to be an active, full-time employee. The group policy specified the persons eligible for benefits, the dates of coverage, the benefits available, and the various methods for the processing of claims. It

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri, after transfer from the Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

also provided for termination of the policy under certain circumstances and advised the group members of their right to convert to individual policies upon termination.

The termination provisions allowed Sanus to terminate the policy upon its anniversary, if Sanus gave written notice not less than forty days before that date. The plan further allowed Sanus to terminate the policy, at its option, if five or fewer subscribers elected coverage. In June 1990, Sanus elected to terminate the policy in accordance with this latter termination provision. The Robinsons have not alleged that they ever attempted to take advantage of the conversion rights provided in the policy.

After termination, Linomaz arranged for replacement health insurance with Central Reserve Life Insurance ("Central Reserve"). Central Reserve is not a party to this action. Central Reserve declined to cover certain medical procedures performed on Kathryn Robinson and her son, Justin. It is this refusal which appears to have triggered the instant litigation.

On June 30, 1993, appellants filed a complaint against Linomaz, Meyer Group, and Sanus (collectively referred to as defendants) in Missouri state court. The complaint contained three counts. Count one sought damages for unpaid medical costs incurred by the Robinsons as a result of defendants' alleged breach of fiduciary duty. These costs were in fact the medical expenses that Central Reserve refused to cover. Count two sought damages for the allegedly fraudulent manner in which defendants cancelled the insurance contract. Count three sought damages for the allegedly negligent manner in which defendants failed to notify appellants about their policy conversion rights.

On August 3, 1993, defendants filed a notice of removal pursuant to 28 U.S.C. § 1446(e), and on August 6, 1993, Sanus filed a motion to dismiss the complaint on the grounds that the state law claims were preempted by ERISA. The other defendants filed similar motions. On February 7, 1994, the district court issued an order concluding that all of the state law claims were preempted by ERISA. *Robinson v. Linomaz*, No. 4:93CV 1721 (E.D.Mo. Feb. 7, 1994) (Memorandum and Order) (*Robinson*). At that time, the district court granted appellants leave to amend their complaint to state relevant claims under ERISA. They declined this option, and instead filed a motion to reconsider. On April 19, 1994, the district court denied this motion and transferred the case to the Honorable Donald J. Stohr. In an order dated June 9, 1994, the district court, upon appellants' request, issued an order making the previous rulings final for purposes of appeal. This appeal followed.

**DISCUSSION**

**I.**

**A.**

Appellants contend that Webster's purchase of insurance from Sanus did not establish an EWBP. They argue that Webster's only connection with the Sanus health insurance policy was the payment of premiums and that the mere purchase of insurance does not meet the statutory definition of an EWBP.[2] They assert that they did not administer the plan and that the one full-time employee who was included in the policy did not expect health benefits from his employment at Webster; rather, he was only included in order for the Robinsons to obtain policy coverage for themselves.

Sanus responds that, under the plain language of ERISA, an employer establishes an ERISA plan when it buys health insurance for some or all of its employees. In the present case, appellants admit that Sanus provided a "group" policy. Further, the GMSA attached to the insurance contract required the group to pay the premiums. In sum, Sanus argues that Webster was an "employer" who established a "program" to pro-

---

**2.** The statute defines an EWBP as "any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits." 29 U.S.C. § 1002(1). The term "employee benefit plan," which is used occasionally in this opinion, includes EWBPs in its definition. *See id.* § 1002(3).

vide medical benefits to employees "through the purchase of insurance." *See* 29 U.S.C. § 1002(1). Thus, it believes that the plain terms of the statute define this arrangement as an EWBP under ERISA.

### B.

■ A number of courts have held that an employer's payment of insurance premiums, standing alone, is substantial evidence of the existence of an ERISA plan. *See, e.g., Madonia v. Blue Cross & Blue Shield,* 11 F.3d 444, 447 (4th Cir.1993) (*Madonia* ), *cert. denied,* —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 73 (1994); *Randol v. Mid–West Nat'l Life Ins. Co.,* 987 F.2d 1547, 1551 (11th Cir.) (*Randol* ), *cert. denied,* —— U.S. ——, 114 S.Ct. 180, 126 L.Ed.2d 139 (1993); *Brundage–Peterson v. Compcare Health Services Ins. Co.,* 877 F.2d 509, 511 (7th Cir. 1989); *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987). Further, there is no requirement that the employer play any role in the administration of the plan in order for it to be deemed an EWBP under ERISA. *Donovan v. Dillingham,* 688 F.2d 1367, 1374 (11th Cir.1982) (en banc); *see Randol,* 987 F.2d at 1550–51 n. 5 (11th Cir.1993) ("[A] commercially purchased insurance policy under which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes."). The statute simply provides that the EWBP must be "*established* or maintained" by the employer. 29 U.S.C. § 1002(3) (emphasis added). Therefore, an employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an EWBP for ERISA purposes. *See Madonia,* 11 F.3d at 447 ("Under [the] statutory definition [of an employee welfare benefit plan], employers may easily establish ERISA plans by purchasing insurance for their employees.").

■ Webster, a Missouri corporation, purchased insurance to provide health care benefits. While it appears that the Robinsons' true motivation in contracting for this coverage may have been the desire to obtain a policy for the Robinson family, the policy on its face clearly demonstrated that it was not a family health insurance policy. It was a "group" policy for full-time employees of Webster, a corporation, and their families. In fact, Sanus would not provide insurance coverage unless Webster included Cassani, the non-owner, common law employee. The policy required the group to pay the premiums, and no coverage was available unless the group paid the initial premium. If Webster later chose to require participants to contribute to the premium payments, the policy provided that Webster had to make the necessary administrative arrangements. In light of the broad language of the statute's definition of an EWBP and the subsequent caselaw applying it, we hold that the purchase of the group policy in the present case did qualify as an EWBP as defined by ERISA.

### II.

### A.

The Robinsons also argue that, as the sole shareholders of Webster, they cannot be deemed "participants" in the plan under ERISA and are therefore left without standing to sue under the statute.[3] The district court concluded that the Robinsons had standing to sue as participants in the plan. *Robinson,* slip op. at 2. The Robinsons contend that the district court erroneously relied on the Fourth Circuit's opinion in *Madonia,* which held that a sole shareholder of a closely-held corporation who was also an employee of the corporation may be deemed a par-

---

**3.** Section 3(7) of ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). An "employee" is defined as "any individual em-

ployed by an employer." *Id.* § 1002(6). The Supreme Court has recently stated that this definition of "employee" is "completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 1346, 117 L.Ed.2d 581 (1992) (*Darden* ). The Court therefore adopted a common law agency test for determining who qualifies as an "employee" under ERISA. *Id.*

ticipant for purposes of ERISA. 11 F.3d at 448–450.

In response, Sanus contends that, because the Robinsons were also employees of Webster, they were eligible to be participants in the Webster plan. Sanus agrees with the Robinsons that federal regulation does not treat them as "employees" for the purpose of determining the *existence* of an ERISA plan. *See* 29 C.F.R. § 2510.3–3(b), (c)(1). However, Sanus maintains that, once the threshold question of whether an ERISA plan exists has been answered in the affirmative, sole shareholders who are also employees of the corporation, like the Robinsons, can qualify as participants in the ERISA plan.

### B.

■ In *Madonia*, the Fourth Circuit considered the same argument with which we are now confronted. Madonia, a sole shareholder, claimed that he could not be a participant in an ERISA plan because he was not an "employee," even though he was technically employed by the corporation. The court explained that the Department of Labor regulation[4] concerning the existence of an "employee benefit plan" did not govern the question of whether someone is a "participant" in an ERISA plan, once the existence of that plan has been established. Because the court concluded that the regulation did not eliminate the possibility that Madonia could be an "employee" for purposes of assuming "participant" status, the court next considered whether Madonia could be deemed an employee under common law principles. In light of *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (*Darden*), the Fourth Circuit looked to Virginia law to determine whether Madonia would be deemed an employee under state law. The court noted that Virginia law had long recognized the corporation as a separate and distinct entity and therefore concluded Madonia would be considered an

employee of such entity. *Madonia*, 11 F.3d at 449.

While we are inclined to believe that the *Madonia* court's approach was correct, we base our decision on grounds which we believe more directly respond to the thrust of the Robinsons' argument. The Robinsons vigorously argue that they cannot be deemed "participants" because they wish to ultimately demonstrate their inability to enforce, through civil action, the provisions of ERISA. However, the Robinsons fail to recognize that it is not only "participants" who are allowed to sue. A civil action under ERISA may be brought by "a participant or beneficiary." 29 U.S.C. § 1132(a)(1). A "beneficiary" is "a person designated by a participant, or *by the terms of an employee benefit plan*, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8) (emphasis added). In *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 408 (9th Cir.1995), the Ninth Circuit recently held that a partner in a business concern had standing to sue under ERISA as a "beneficiary" designated by the terms of an "employee benefit plan." Relying on ERISA's definition of "beneficiary," the court concluded that "any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA."[5] *Id.* at 409. It reasoned that "[t]o hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA." *Id.* In *Madonia*, the Fourth Circuit reached an analogous conclusion in the context of its "participant" standing analysis: "[O]nce a plan has been established, it would be anomalous to have those person benefitting from it governed by two disparate sets of legal obligations." *Madonia*, 11 F.3d at 450.

Even if we assume, as appellants contend, that *Madonia* misapplied the common law agency test set out in *Darden* for who is an

---

4. *See* 29 C.F.R. § 2510.3–3(c) which provides in part: "For purposes of this section: (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse...."

5. In so holding, the Ninth Circuit noted that the Supreme Court's analysis in *Darden* was limited to the scope of "participant" standing under ERISA. *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 409 (9th Cir.1995).

"employee" under § 3(6), the Robinsons were at the very least made beneficiaries by the terms of the EWBP. The district court in fact noted that the Robinsons were beneficiaries of the policy. *Robinson,* slip op. at 2. Understandably, appellants did not take issue with this characterization. However, because the Robinsons were clearly beneficiaries of a plan subject to ERISA, we hold that the Robinsons did have standing to maintain suit under ERISA.

### III.

 Appellants next argue that preemption leaves them with no cause of action because none of the defendants may be deemed a "fiduciary" under ERISA. They fail to explain the apparent inconsistency of their current position with the fact that in their state law complaint, they allege that all defendants were fiduciaries. We assume, however, appellants would claim that defendants were fiduciaries under state law but not under the terms of ERISA. Even if we were to conclude that this "absence of an identifiable fiduciary" argument had merit,[6] it does not address the scope of ERISA preemption. If their causes of action "relate to" an "employee benefit plan," the claims are preempted by ERISA. 29 U.S.C. § 1144(a). The Supreme Court has characterized this preemption language as "conspicuous for its breadth." *FMC v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Therefore, if we hold that claims arising out of the termination of an employee benefit plan are "related to" an employee benefit plan, preemption applies. The fact that the statute may not provide a cause of action might support an argument for a federal common law remedy, but it does not limit the scope of ERISA preemption.

We lastly consider whether preemption of appellants' claims was improper because, as appellants argue, the plan has been terminated, and thus, their causes of action for wrongful termination do not "relate to" an employee benefit plan. In most if not all cases, an examination of the termination of a plan governed by ERISA will require reference to the various provisions of the statute and the terms of the plan itself. Accordingly, we hold that appellants' claims of wrongful termination of the policy do "relate to" an "employee benefit plan" and are therefore preempted by ERISA. *See Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 509 (10th Cir. 1991).

### CONCLUSION

For the reasons discussed above, the judgment of the district court is affirmed.

---

**6.** *See Pacificare v. Martin,* 34 F.3d 834, 837 (9th Cir.1994), *quoting Kyle R.R. v. Pacific Admin. Serv.,* 990 F.2d 513, 517–18 (9th Cir.1993) ("Insurers can be ERISA fiduciaries if 'they are given the discretion to manage plan assets or to deter-mine claims made against the plan.... [A]n insurer will be found to be an ERISA fiduciary if it has the authority to grant, deny or review denied claims.' ").