Gerald **GRIMO** and Gerald Grimo,
**Special Administrator of the**
**Estate of Diana Grimo**

v.

**BLUE CROSS AND BLUE SHIELD**
**OF VERMONT.**

**Civ. A. No. 5:93–CV–47.**

United States District Court,
D. Vermont.

Sept. 12, 1995.

**198**

Eric R. Benson, Burlington, VT, for plaintiffs.

Nancy J. Creswell, Paterson & Walke, P.C., Montpelier, VT, for Defendant.

### OPINION–ORDER

BILLINGS, Senior District Judge.

The following Motions bring this matter to the Court's attention:

1. Renewed Motion to Remand filed by Plaintiff Gerald Grimo, in his personal capacity and as the special administrator of Diana Grimo's estate;

2. Defendant Blue Cross and Blue Shield of Vermont's ("Blue Cross") Motion to Retain Jurisdiction; and

3. Blue Cross's Motion to Strike.

Defendant Blue Cross has submitted opposition to Plaintiff Grimo's Renewed Motion to Remand, and Grimo has filed opposition to Blue Cross's Motion to Retain Jurisdiction and Motion to Strike. Plaintiff has also requested a hearing on this matter. After reviewing the hearing request, however, the Court concludes that oral argument will not materially assist our decision in this matter. Therefore, pursuant to our discretion under Local Rule 5(a), we decline to hold a hearing and instead proceed to rule on the papers.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Blue Cross's denial of health insurance benefits to Plaintiff Grimo and his wife Diana for medical expenses that Diana Grimo incurred during 1992 and 1993. After Blue Cross denied coverage, Gerald Grimo brought six state law claims against the insurer in the Superior Court of Washington County, Vermont. Blue Cross removed the case to this Court on the grounds that Grimo's policy was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The only issue presently before us is whether the Court has federal question jurisdiction over this matter under ERISA.

Gerald and Diana Grimo both worked at Twin State Typewriters, Inc., ("Twin State"), an office equipment concern in White River Junction, Vermont. Twin State's President and majority shareholder, Richard Lawrence, organized the company as a Subchapter S Corporation in 1980. Richard Lawrence owned eight shares of Twin State, while his wife, Marine Lawrence, and his daughter, Diana (Lawrence) Grimo, owned one share each. Gerald Grimo worked at Twin State for three years but never had an ownership interest in the corporation.

In 1980, Richard Lawrence contacted the Small Business Services Bureau ("SBSB") about obtaining health insurance for Twin State employees. SBSB is a Worcester, Massachusetts corporation which, among other things, operates as a Multiple Employer Trust ("MET") to provide group medical benefit coverage to small businesses such as Twin State. After Lawrence discussed the options with SBSB representatives in 1980, Twin State purchased group health insurance from Blue Cross through SBSB later that year.

Twin State employees were eligible to purchase health insurance through the SBSB program provided that certain eligibility requirements were met. For example, only active, full-time Twin State employees were eligible. In addition, Twin State was itself required to contribute 50% of the cost of the insurance purchased by employees and shareholders.

Richard and Marine Lawrence were covered by the health insurance arrangement between Twin State and SBSB from 1980 until 1993. Between 1984 and 1992, a total of five non-shareholder employees of Twin State received group medical insurance through Twin State's plan with SBSB.[1] In

---

1. The five non-shareholder employees were Gerald Grimo, Real Fournier, Sheila Davis, David Hays and Michael Lee.

addition, during every year between 1984 and 1992 at least one non-shareholder employee of Twin State was covered by the insurance scheme. Twin State maintained the health insurance coverage until it terminated the plan in November 1993.

Twin State engaged in a variety of activities to oversee and facilitate the health insurance plan with SBSB. Twin State advanced corporate funds to purchase the insurance coverage for its shareholders and employees, and the company selected the particular benefit package and rates which would apply. Twin State submitted employee insurance cards as proof of eligibility, remitted premiums when they were due, added and deleted employees from policy coverage, and selected deductible amounts on behalf of its employees. The company maintained a file containing information about the benefits scheme, and it distributed plan descriptions, brochures, application forms, claims forms and other relevant documents to its employees. When necessary, Twin State distributed paperwork directly to SBSB. Resolution of administrative problems was typically accomplished between Twin State President Richard Lawrence and SBSB, rather than by direct communication between SBSB and Twin State employees.

Twin State also played a central role in funding the purchase of health insurance for its shareholders and employees. The company fully-funded the purchase of health care benefits by its shareholders. This could not be done directly, however, because of IRS regulations governing S Corporations. Instead, to comply with IRS rules, Twin State deducted the insurance premium costs from the corporate earnings which ordinarily would pass through to the shareholders. At the end of each year, Twin State provided the shareholder with a bonus equal to the amount of premiums that had been paid plus any taxes and costs that had been incurred in the process. The corporation fully absorbed the health insurance costs of its shareholders in this manner until 1993, the final year that Twin State maintained the policy with SBSB. In that year, Twin State shared health insurance costs with its shareholders by limiting the deductibility of insurance premium costs at the corporate level.

Twin State also helped Gerald Grimo, an employee but not a shareholder, with the payment of his insurance premiums.[2] Twin State paid Gerald Grimo's premiums in 1991 and 1992; Grimo reimbursed Twin State for a portion of the premium payments in 1992, but he provided no reimbursement for the 1991 premium payments. From 1990–1992, Diana Grimo was a dependent spouse covered by Gerald Grimo's health insurance.

It was in the Fall of 1992 that Diana Grimo informed Blue Cross of her intent to seek treatment for her medical condition from Dr. William J. Rea in Dallas, Texas. Blue Cross approved three days of in-patient care which commenced on October 27, 1992. However, on October 30, 1992, Blue Cross denied coverage for continued in-patient care on the grounds that it was not "medically necessary."

In December 1992, Diana Grimo removed herself from Gerald Grimo's health benefits coverage and purchased Blue Cross insurance through the SBSB plan in her own name. At the same time, her husband Gerald Grimo terminated his own independent policy and became covered as a spouse under Diana Grimo's plan.

Meanwhile the Grimos continued to contest Blue Cross's denial of coverage. They appealed the coverage decision through Blue Cross's Claims Appeal Committee, which, after several hearings, upheld the denial of benefits. On February 11, 1993, the Grimos filed the present action in the Superior Court of Washington County, Vermont, alleging a variety of state law claims against Blue Cross arising out of the company's denial of coverage. Blue Cross removed the case here pursuant to 28 U.S.C. § 1441, claiming that federal question jurisdiction obtained because the Grimos' insurance policy with Blue Cross constituted a plan governed by ERISA. The Grimos motioned to remand the case to state court, arguing that there was no federal jurisdiction because their insurance policy did

---

**2.** The four other non-shareholder employees who purchased health insurance through Twin State paid for their own premiums through payroll withholding.

not qualify as a plan under ERISA. The Court disagreed, finding that the Grimos' policy was part of an ERISA plan and that federal jurisdiction was therefore proper. Subsequently, on the merits, the Court dismissed five of the six state law claims on the ground that they were preempted by ERISA, construed the sixth claim as an ERISA claim, and granted summary judgment on it to Blue Cross, reasoning that the company's denial of benefits was not arbitrary or capricious.[3]

On appeal, the United States Court of Appeals for the Second Circuit vacated our judgment. *Grimo v. Blue Cross/Blue Shield of Vermont,* 34 F.3d 148, 153 (2d Cir.1994). The Second Circuit held that the factual record was insufficient to determine whether or not the arrangement between Twin State and SBSB met the definition of an ERISA plan. *Id.* at 149. Consequently, the Court remanded the case so that the jurisdictional dispute could be resolved after development of a more complete factual record.

On remand, the parties have renewed their arguments over the existence of an ERISA plan and the propriety of federal jurisdiction. In addition, they have generated a substantial factual record consisting of deposition testimony, affidavits, and various documents and records. We now turn to an application of the governing legal principles to the relevant facts in the record before us.

## II. DISCUSSION

On September 2, 1974, after nearly a decade of examining the nation's private insurance and pension plans, Congress enacted the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001–1461. After this careful study, Congress found it necessary to provide safeguards for the establishment, operation, and administration of employee benefit plans. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987). Congress passed ERISA to establish these safeguards, intending that the statute would protect employees' contractually defined bene-

fits, *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989), and promote the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 362, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). According to Congress, ERISA implements these policies

> by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect [to employee benefit plans], by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). The rights and remedies provided by ERISA may be invoked whenever a system of employee benefits meets ERISA's statutory definition of an "employee benefit plan." 29 U.S.C. § 1003(a).

■ An "employee benefit plan" under ERISA means either an "employee welfare benefit plan" or an "employee pension benefit plan." 29 U.S.C. § 1002(3). This case concerns only the first of these, an "employee welfare benefit plan," which ERISA defines as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). Using this statutory definition, courts have developed a three-step test to determine whether an employee welfare benefit plan has been established. Ac-

---

**3.** Diana Grimo continued to receive treatment throughout these proceedings, which followed the denial of benefits. She died on October 16, 1993, and her husband was substituted for her in this litigation as special administrator of her estate.

cording to this test, the court must determine: (1) whether a plan existed; (2) if so, whether it was covered by the "safe harbor" established by Department of Labor regulations pertaining to group insurance; and (3) whether, if the plan is outside the safe harbor, the employer's involvement is sufficient to have established or maintained the plan. *Grimo,* 34 F.3d at 151–52; *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976–79 (5th Cir.1991).[4]

■ Under the three-step test established in *Donovan* and clarified in *Grimo,* "the existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances from the point of view of a reasonable person." *Credit Managers Ass'n v. Kennesaw Life & Accident Ins.,* 809 F.2d 617, 625 (9th Cir.1987) (citing *Donovan,* 688 F.2d at 1373). The focus of the inquiry is on the employer's conduct and involvement with the plan. *Rodriguez v. Pacificare of Texas, Inc.,* 980 F.2d 1014, 1017 (5th cir.1993). The guiding principle of the analysis is Congress' intent "that coverage under [ERISA] be construed liberally to provide the maximum degree of protection to working men and women." S.Rep. No. 127, 93rd Cong. (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4854. *See also Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir.1991) (*Donovan* test suggests a flexible analysis to further Congress' intent that ERISA coverage be broadly construed in order to best safeguard employees' interests in their benefit plans).

■ If a benefits scheme satisfies the definition of an employee welfare benefit plan, then ERISA governs the matter and jurisdiction must remain in the federal court. *Grimo,* 34 F.3d at 151; *Hansen,* 940 F.2d at 976.

If the statutory definition is not satisfied, then there is no federal jurisdiction and the case must be remanded to state court. *Grimo,* 34 F.3d at 151; *Hansen,* 940 F.2d at 976. The party seeking removal has the burden of establishing that federal jurisdiction is proper. *Grimo,* 34 F.3d at 151.

In the present case, Blue Cross claims that federal jurisdiction is proper because the health insurance plan that it provided to Twin State through SBSB allegedly qualifies as an employee welfare benefit plan under ERISA. Plaintiff Grimo maintains that Twin State and Blue Cross never established an ERISA plan, and that this Court therefore lacks jurisdiction and must remand the matter to Vermont state court. Thus, the question presented is whether the benefits arrangement that Twin State established with Blue Cross qualifies as an ERISA employee welfare benefit plan. If Twin State established or maintained a plan that is not excluded from ERISA by the safe harbor regulations, then federal jurisdiction is proper. Otherwise, this case must be remanded to Washington County, Vermont, Superior Court. With this framework in mind, we now apply the three-step test from *Grimo* to determine whether there was an employee welfare benefit plan under ERISA.

### A. THE EXISTENCE OF A PLAN

■ "An employer can establish an ERISA plan rather easily." *Kennesaw,* 809 F.2d at 625. It is not necessary that the plan be committed to writing, *Donovan,* 688 F.2d at 1372,[5] and no particular formalities are required. *Miller v. Taylor Insulation Co.,* 39 F.3d 755, 760 (7th Cir.1994). Rather, the well-established rule is that an employee welfare benefit plan exists for purposes of

---

4. This test was originally formulated in *Donovan,* which has been referred to as the case that formulated the "prevailing standard" for determining whether an employee welfare benefit plan has been established under ERISA. *Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.1990). The Second Circuit approved the *Donovan* test when the present case was first appealed, *Grimo,* 34 F.3d at 151–52, and it has been widely followed by other Circuit Courts of Appeal as well. *See, e.g., Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240–41 (5th Cir.1990); *Brown v. Amp-*

*co–Pittsburgh Corp.,* 876 F.2d 546, 551 (6th Cir. 1989); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 739 (7th Cir.1986); *Harris v. Arkansas Book Co.,* 794 F.2d 358, 360 (8th Cir. 1986); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503–04 (9th Cir.1985).

5. If the rule were otherwise, "employers could avoid federal regulations merely by failing to memorialize their employee benefit programs in a separate document so designated." *Memorial Hospital,* 904 F.2d at 241.

ERISA "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan,* 688 F.2d at 1373.

It is clear that the facts in the present case satisfy the *Donovan* standard for the existence of a plan. First, the intended benefit of the arrangement was obviously medical insurance coverage for the participants. *See Randol v. Mid–West National Life Ins. Co.,* 987 F.2d 1547, 1550 (11th Cir. 1993) (medical care provided under an insurance policy qualifies as intended benefit under *Donovan* test for existence of ERISA plan). Second, the class of beneficiaries clearly consisted of Gerald Grimo, Diana Grimo, and the other employees and shareholders of Twin State who enrolled in the insurance package.[6] Third, a reasonable person could easily ascertain through common knowledge and through the plan brochures in Lawrence's office that it was necessary to secure a claims form from Twin State and submit it to Blue Cross in order to receive benefits.[7]

Finally, a reasonable person must be able to identify the source of funding for the plan. The source of funding may be the employer, *Memorial Hospital,* 904 F.2d at 242–43, the employee, *Hansen* 940 F.2d at 977–78, or a combination of both. *Madonia,* 11 F.3d at 446–47. In the present case, it was apparent that some employees paid their own premiums, while Twin State sometimes paid the premiums for other employees such as the shareholders and Gerald Grimo. During other years, Twin State shared the cost of premiums with Gerald Grimo and with the shareholders.[8] Since a reasonable person would understand that the source of financing was either the employer, the employee, or both, depending on the year and the individual, the Court finds that the source of funding element of the *Donovan* test is satisfied.

As the preceding discussion indicates, a reasonable person considering the facts and circumstances of the Twin State plan could ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits. Consequently, the Court concludes that an employee welfare benefit plan exists for purposes of ERISA. Having established that a plan exists, we must now consider whether it is excluded from ERISA coverage by Department of Labor regulations.

## B. THE DEPARTMENT OF LABOR'S "SAFE HARBOR" REGULATIONS

The Department of Labor's "safe harbor" regulations exclude from ERISA coverage some employee benefits arrangements that would otherwise qualify as plans under the statute. The regulations provide that the term "employee welfare benefit plan" does

---

6. Department of Labor regulations require the involvement in the plan of at least one employee of a business other than the sole owner in order to satisfy the requirement that plan "participants" exist. *See* 29 C.F.R. §§ 2510.3–3(b), 2510.3–3(c)(1). In addition, it is well established that the requirement of a class of beneficiaries may be satisfied even where there is only one employee participating in the plan. *See, e.g., Madonia v. Blue Cross and Blue Shield of Va.,* 11 F.3d 444, 447–49 (4th Cir.1993); *Williams,* 927 F.2d at 1545. These standards are met in the present case because a total of five non-shareholder Twin State employees were covered under the plan between 1980 and 1993. Affidavit of William Mancini, SBSB Senior Vice President for Marketing Operations ("Mancini affidavit"), at 4–5. In addition, at least one non-shareholder employee was covered in every year between 1984 and 1992. *Id.*

7. In addition, this element of the test is satisfied because the Subscriber Certificate outlines procedures for the submission of claims and the appeal of a claims denial. Deposition of Gerald Grimo ("Grimo deposition") at ex. H; *Memorial Hospital,* 904 F.2d at 241 (identification of claims procedure is sufficient where Certificate of Insurance described manner in which benefits are obtained).

8. The parties dispute the nature and significance of the contribution to the premium payments made by Twin State and by its employees. Blue Cross claims that Twin State paid a varying percentage of at least Gerald Grimo's premiums for a number of years, while Twin State maintains that it never contributed to its employees premium payments. This dispute is irrelevant at this point in the analysis, however, because all that is required is that the source of financing be identifiable. *Donovan,* 688 F.2d at 1373. The dispute over the source of financing is examined in more detail in Section B(1), *infra.*

not include a group or group-type insurance program under which:

  (1) No contributions are made by an employer or employee organization;

  (2) Participation in the program is completely voluntary for employees or members;

  (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

  (4) the employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1987). "The existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act." *Memorial Hospital*, 904 F.2d at 241 n. 6. *See also Grimo*, 34 F.3d at 152. In other words, the existence of any one of the four enumerated factors means that the safe harbor regulation is inapplicable and that the plan may still be governed by ERISA. In the present case, the Court finds that the protections of the safe harbor regulation do not apply because Twin State contributed to its employees' purchase of health insurance from Blue Cross.

### 1. Contributions By Employer

  ■ A benefit plan to which an employer contributes in some fashion will not be excluded from ERISA coverage by the safe harbor regulation. 29 C.F.R. § 2510.3(j)(1) (1987); *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir. 1992).[9] Here, the parties vigorously dispute whether any contributions were made at all. For the reasons that follow, we conclude that Twin State's health insurance scheme with Blue Cross is not protected by the safe harbor regulation because Twin State made significant financial contributions to the plan.

  Plaintiff contends that "Twin State *never* has contributed any portion of the medical insurance premiums of its employees." Plaintiff's Memorandum in Opposition at 5 (emphasis in original). To support this claim, Plaintiff offers his own affidavit, as well as supporting affidavits from Twin State co-owners Marine and Richard Lawrence, and Twin State accountant David St. Sauveur. Each affiant states that Twin State did not pay for the health insurance of any of its employees.

  Defendant maintains that Twin State consistently helped its employees and its stockholders pay for their health insurance. In support of its position, Defendant has submitted Plaintiff Grimo's own sworn deposition, in which he admits that Twin State paid 100% of his insurance costs in 1991 and a part of his 1992 costs as well. Grimo deposition at 21–22, 24–25. Blue Cross has also submitted David St. Sauveur's deposition, in which the Twin State accountant concedes that the company paid Grimo's 1991 health insurance costs and a portion of his 1992 costs. Deposition of David St. Sauveur ("St. Sauveur Deposition") at 36–37. St. Sauveur further testified that Twin State paid the full costs of the medical insurance for its stockholder-employees in 1991 and 1992, and a portion of the costs in 1993. *Id.* at 59–60.[10]

---

9. In *Grimo*, the Second Circuit held that a one-time past employer contribution does not preclude application of the safe harbor regulation. 34 F.3d at 153. However, as this discussion indicates, the more extensive fact finding ordered by the Second Circuit has now revealed that Twin State's contributions were far more extensive than it initially appeared.

10. This was accomplished indirectly. Twin State deducted the insurance premium costs from the corporate earnings which ordinarily would have been passed along to the shareholders. At the end of each year, Twin State provided the shareholder with a bonus equal to the amount of premiums that had been paid plus any taxes and costs that had been incurred in the process. The payments were made in this manner so that Twin State would be in compliance with IRS regulations governing S corporations. This system began to change in 1993, however, when Twin State shared the insurance costs with its share-

In addition, Blue Cross has submitted affidavits and documentation showing that SBSB required its customers to pay at least 50% of their employees' health insurance costs in order to be eligible to participate in SBSB's programs. Mancini affidavit at 5, ex. M, ex. O. According to an SBSB form memorialized in November 1990, Richard Lawrence confirmed Twin State's 50% minimum contribution in a telephone conversation with an SBSB representative. *Id.* at ex. O.[11] Thus, Twin State would not have been eligible for the insurance plan it purchased through SBSB unless Twin State had contributed at least 50% of its employees premiums.

■■■■ As the preceding discussion suggests, the parties' evidentiary dispute centers upon the conflicting testimony and documentation concerning Twin State's degree of financial participation in the purchasing of health insurance for its employees and shareholders. The standards for evaluating a dispute of this nature are clear. Issues of fact may not be created by presenting an affidavit that conflicts with prior sworn testimony. *Trans–Orient Marine v. Star Trading*, 925 F.2d 566, 572 (2d Cir.1991). Further, mere conclusory allegations are not evidence and cannot by themselves establish a factual dispute where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (citing *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)). Rather, concrete particulars must be set forth demonstrating that there are facts at issue. *Research Automation*, 585 F.2d at 33. When these principles are applied to the evidentiary dispute, it is clear that Twin State contributed significantly to its employees' health plan.

Plaintiff Grimo's assertion that Twin State never paid for any of his health insurance directly contradicts the prior sworn testimony in which he concedes that Twin State reimbursed him for 100% of his insurance in 1991 and for a portion of his insurance in 1992. Similarly, St. Sauveur's claim in his affidavit that Twin State did not pay for its employees health insurance contradicts his own deposition, in which he testified that Twin State paid for Gerald Grimo's insurance in 1991 and 1992, paid bonuses to its shareholders to compensate them for their health insurance expenditures in 1991 and 1992, and shared its stockholders' health insurance costs in 1993 by prohibiting them from deducting their premiums and expenses at the corporate level. In addition, although Richard Lawrence alleged in his affidavit that Twin State's employees paid for their own health insurance, SBSB's memorandum confirms that he assured an SBSB representative that his company paid at least 50% of his employees' premiums. His statement to the SBSB representative is supported by the fact that, under SBSB regulations, Twin State was prohibited from participating in the type of plan it maintained unless it made the 50% contribution. Given that Twin State *must* have contributed at least 50% of its employees' health insurance costs in order to qualify for the SBSB plan, and that Plaintiff's affidavit and those of his witnesses are completely contradicted by their own prior sworn testimony and by the documents before us, the Court must conclude that the evidence submitted by the Defendant concerning Twin State's contributions is the more credible.

Based upon the foregoing analysis, the Court finds that Twin State fully funded Plaintiff's health insurance in 1991, and that it shared his health insurance costs with him in 1992. The Court further finds that Twin State fully funded the health insurance costs of its shareholders in 1991 and 1992, and that the company partially funded those costs for its shareholders, including Diana Grimo, in 1993. Because Gerald Grimo was covered by

---

holders by limiting the deductibility of the costs at the corporate level. *Id.* at 58–60. In so doing, Twin State also continued to share Gerald Grimo's insurance costs because he had switched his insurance to a plan under his wife's name in December 1993. Mancini affidavit at 4–5; Affidavit of Fred Duplessis, Certified Public Accountant, at 4, ex. A.

**11.** An SBSB representative had called Lawrence to ask why Gerald Grimo had indicated on a health coverage questionnaire that Twin State did not make the minimum 50% contribution to his insurance payments. *See id.* at ex. M. Lawrence told the SBSB representative that Twin State did make the required contributions and that Grimo should have indicated that on the questionnaire. *See id.* at ex. O.

his wife's plan in 1993, Twin State partially funded his health insurance in that year as well. As these facts indicate, Twin State made significant financial contributions to its employees' and shareholders' insurance programs. The safe harbor regulation therefore does not apply, and Twin State's health insurance plan is consequently not excluded from ERISA coverage.

Having established that a plan exists and that the safe harbor provision is inapplicable, we must now determine whether Twin State established or maintained the plan within the meaning of ERISA.

### C. THE ESTABLISHMENT OF THE PLAN

The focus of the inquiry into whether an ERISA plan has been established is on the employer's conduct. *Hansen*, 940 F.2d at 978. The analysis turns on the character and extent of the employer's involvement with the plan. *Wickman*, 908 F.2d at 1083. In the present case, the Court finds that Twin State established an ERISA plan because the company intended to provide plan benefits and because it was significantly involved in the plan's financing and administration.

An employer's intent to provide benefits on a regular and long-term basis suggests that an ERISA plan has been established. *Wickman*, 908 F.2d at 1083. Here, Twin State clearly had such an intent. Richard Lawrence testified in his deposition that his purpose in providing the plan was to make health insurance available to his employees. Deposition of Richard Lawrence, President of Twin State Typewriters, Inc. ("Lawrence deposition"), at 64. He approached SBSB in 1980 specifically to accomplish this purpose, *id.* at pp. 34, 52, and he then maintained the plan for more than twelve years. Thus, the evidence suggests that an ERISA plan was established because Mr. Lawrence intended that Twin State would provide the benefit of a health insurance plan on a regular and long-term basis.

Another significant factor in determining whether an ERISA plan has been established concerns the employer's financial contribution to the plan. It is well-settled that "em-ployers may easily establish ERISA plans by purchasing insurance for their employees." *Madonia*, 11 F.3d at 446. *See also Donovan*, 688 F.2d at 1373 (purchase of a group insurance policy offers substantial evidence that a plan, fund or program has been established); *Memorial Hospital*, 904 F.2d at 242–43 (same). In *Grimo*, the Second Circuit held that an ERISA plan may not be established solely by a single past employee contribution. *Grimo*, 34 F.3d at 153. However, as was discussed above, Twin State made a significant annual contribution toward the costs of its employees' and shareholders' health insurance for a number of years. Twin State's substantial financial contribution for the costs of the plan provides strong evidence that the company established an ERISA plan.

Employer involvement with the administration of the plan indicates that an ERISA plan has been established. *Hansen*, 940 F.2d at 978. Here, Richard Lawrence contacted SBSB so that Twin State could establish a plan for its employees, and the company then made arrangements to initiate the plan so that coverage would commence. Mancini affidavit at 4. Twin State remitted premiums when due, added and deleted employees, distributed claim forms, submitted employee insurance cards, and selected deductible amounts on behalf of its employees. *Id.* at 5–6. It was Twin State, rather than its employees, that chose the particular coverage plan. *Id.* at 6; Lawrence deposition at 36. Finally, and perhaps most importantly, Twin State's financial contributions to the plan entailed a great many administrative tasks on the company's part. St. Sauveur deposition at pp. 35, 36, 37, 39, 45, 49, 57. For example, the company remitted premiums, advanced funds, paid bonuses, and engaged in substantial bookkeeping and records management to maintain the operation of the payment system. *Id.* Twin State's significant involvement with the administration of the plan provides further support for a finding that the plan was established by the company.

As the preceding discussion indicates, Twin State intended to provide its employees and shareholders with the benefit of a health

insurance plan, and it accomplished this purpose by financing and administrating the purchase of health insurance form SBSB. Consequently, the Court concludes that Twin State established a plan within the meaning of ERISA.

## III. CONCLUSION

In light of the foregoing analysis, the Court finds that Twin State established an ERISA plan with SBSB that was not covered by the Department of Labor's safe harbor provisions. The Court therefore concludes that Twin State's arrangement with SBSB constitutes an employee welfare benefit plan under ERISA. Because the ERISA employee welfare benefit plan existed, this Court has federal question jurisdiction over the matter. Consequently, the Court hereby:

1. GRANTS Defendant Blue Cross's Motion to Retain Jurisdiction;

2. DENIES Defendant Blue Cross's Motion to Strike; and

3. DENIES Plaintiff Gerald Grimo's Renewed Motion to Remand.

SO ORDERED.