**In re James M. CRAIG, Debtor.**

**Kip KALER, Trustee/Appellee,**

v.

**James M. CRAIG, Debtor/Appellant.**

**Civil No. A3–96–18.**

United States District Court,
D. North Dakota,
Southeastern Division.

July 15, 1996.

Roger J. Minch, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, ND, for Appellant.

**752**

Tarek Howard, Kaler Law Office, Fargo, ND, for Appellee.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

The debtor (Craig) appeals from Orders of the United States Bankruptcy Court dated November 17, 1995 (finding Craig's interest in certain pension plans to be property of the estate) and December . 22, 1995 (denying Craig's request to amend the first order).

### Standard of Review

In reviewing bankruptcy orders, this court acts as an appellate court. *In re Muncrief,* 900 F.2d 1220, 1224 (8th Cir.1990). The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard. *Id.* Conclusions of law are reviewed de novo. *Id.*

### Background

Craig executed pension and profit-sharing plans and accompanying trust agreements in 1976. At the time, he was doing business as a Montana professional corporation, James M. Craig, M.D., P.C., in which he was the sole shareholder. Craig signed the agreements as president of the employer corporation and as trustee of the plans. Besides Craig himself, there were other employee-participants in the plans from 1976 until 1986. These were bookkeepers and nurses, including Craig's wife. Sometime after 1986, the professional corporation ceased business. A certificate of fact from the Montana Secretary of State indicates that James M. Craig, M.D., P.C. was involuntarily dissolved on December 12, 1988. According to Craig's testimony, the participants' interests in the pension and profit-sharing plans vested when the corporation ceased business. (Tr. at 32, 44.)[1] As trustee, Craig paid out the assets of all participants except his own and his wife's. No further contributions were made to the plans. As Craig's expert testified and

as the bankruptcy court agreed, the plans became "wasting" or "frozen" plans. Since that time, Craig has done business as a sole proprietor.

In 1991, Craig and his wife were divorced. Craig testified that the divorce decree awarded her one half of his interest in the plans. (Tr. at 49.)[2]

In 1995, in preparation for filing bankruptcy, Dr. Craig executed amendments to the plans. The documents purported to "amend" and "restate" the original plans. Under the original plan documents, the "employer" had the power to amend the plans. § 8.01. The "employer" was defined as "James M. Craig, M.D., P.C., and any successor by change of name, merger, purchase of stock or purchase of assets." § 1.01(a). In executing the 1995 amendments, Craig signed as he had originally: for the employer corporation, James M. Craig, M.D., P.C.; and individually as trustee of the plans. However, the corporation did not exist at the time the amendments were executed.

The bankruptcy court ruled that the "1995 plans" are property of the bankruptcy estate because they are not subject to the Employee Retirement Income Security Act (ERISA). The bankruptcy court reaffirmed this ruling in denying Craig's motion to alter or amend the first order.

### Analysis

As noted above, the bankruptcy court discusses the "1995 plans" as distinct from the "1976 plans." However, Craig and his expert testified that the original plans were never terminated. The money presently in the accounts was accumulated under the original plans and has not been withdrawn or otherwise materially changed in status. Here a distinction must be drawn between the plan documents, which may have changed, and the plans themselves (or more importantly, the assets accumulated under the plans), which have not changed. If the 1995 documents

---

1. This is confirmed by section 8.03 of both plan documents which provide that "In the event of permanent discontinuance of Contributions to the Plan by the Employer, the accounts of all vested and nonforfeitable to such Members to the extent funded."

2. This interest is distinct from her own interest as an employee-participant, which was never paid out.

have any effect, they "amend" and "restate" the plans. They do not terminate the original plans and create new ones, as the bankruptcy court seems to assume. This factual assumption was clearly erroneous. If the assets accumulated under the original plans were excludable from the bankruptcy estate before the 1995 amendments, they do not come into the estate merely because those amendments were executed. With the understanding that there is no distinction between the assets of the "1976 plans" and "1995 plans," the court will address whether the plans are subject to ERISA.

■ If a debtor's beneficial interest in a trust has a transfer restriction which is enforceable under "applicable non-bankruptcy law," then that property is excluded from the bankruptcy estate. 11 U.S.C. § 541(c)(2). "Applicable non-bankruptcy law" includes ERISA, so that if there is an enforceable anti-alienation provision in an "ERISA-qualified" plan, the property is excluded from the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 758–60, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992).

■ The *Shumate* Court did not discuss what makes a plan ERISA-qualified. As construed by other courts after *Shumate*, an "ERISA-qualified" plan means a plan that is both "subject to ERISA" and tax-qualified under the Internal Revenue Code. *See, e.g., In re Hall,* 151 B.R. 412, 417–20 (Bankr. W.D.Mich.1993). The bankruptcy court in this case ruled only on the first question, finding that the plans were not "subject to ERISA" because they had no eligible employee participants.

ERISA applies to any "employee benefit plan" established or maintained by an employer. 29 U.S.C. § 1003.[3] Under ERISA, the assets of a plan must not inure to the benefit of an employer but must be for the benefit of "participants" in the plan and their beneficiaries. 29 U.S.C. § 1103(c)(1). A "participant" is an employee or former employee who is or may become eligible to receive a benefit from a plan. 29 U.S.C. § 1002(7). ERISA simply defines "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6).

The definition of an "employee benefit plan" is clarified by regulation to determine what plans are covered by ERISA. 29 C.F.R. § 2510.3–3(a). An "employee benefit plan" does not include any plan in which no "employees" are "participants covered under the plan." § 2510.3–3(b). Under the regulation, the term "employees" does not include an individual or spouse when the business is wholly owned by that individual and/or spouse. § 2510.3–3(c)(1).

■ In *Madonia v. Blue Cross & Blue Shield of Virginia,* the Fourth Circuit explained that the definition found in the regulation only applies within the regulation itself (i.e., to define which plans are subject to ERISA) but does not apply throughout ERISA. 11 F.3d 444, 449–50 (4th Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994). Rather, the common law definition of "employee" applies for other purposes under ERISA. *Id.* The *Madonia* court reasoned that so long as there are other "employees" to bring the plan within the definition of an employee benefit plan, so as to be covered by ERISA, then a sole shareholder and spouse (because they are common law employees of the distinct corporate entity) can be participants in the plan. *Id.* The court explained that "the regulation does not govern the issue of whether someone is a 'participant' in an ERISA plan, once the existence of that plan has been established" because "once a plan has been established, it would be anomalous to have those persons benefitting from it governed by two disparate sets of legal obligations." *Id.* The Eighth Circuit has agreed with this analysis. *See Robinson v. Linomaz,* 58 F.3d 365, 369 (8th Cir.1995) (stating that "we are inclined to believe that the *Madonia* court's approach was correct," but deciding the case on different grounds). Although the Eighth Circuit's

---

3. An "employee benefit plan" is an "employee pension benefit plan" (providing retirement benefits or deferred income) or an "employee welfare benefit plan" (providing other types of benefits), or a plan that is both. 29 U.S.C. § 1002(1)–

(3). Craig's pension and profit-sharing plans were both "employee pension benefit plans" in ERISA's terms because they provided retirement benefits and deferred income.

agreement was in dicta, it nevertheless provides guidance which this court must respect.[4] The analysis is reinforced by an ERISA opinion letter which states that "the regulation [29 C.F.R. § 2510.3–3] defines 'employee' only for the limited purpose of determining whether a plan has any employees, in connection with determining whether a plan exists within the meaning of title I of ERISA." ERISA Opinion Letter No. 79–8A. In addition, the analysis is reinforced by the *Shumate* Court's reconciliation of the Bankruptcy Code and ERISA in favor of debtor protection and uniformity. *See Shumate*, 504 U.S. at 764, 112 S.Ct. at 2250 ("Our holding ... gives full and appropriate effect to ERISA's goal of protecting pension benefits.... [It also] furthers another important policy underlying ERISA: uniform national treatment of pension benefits."). This court thus concludes that so long as employee participants other than the sole shareholder and/or spouse bring the plan within ERISA's coverage, the sole shareholder and/or spouse can participate in the plan.[5]

Other cases cited by the bankruptcy court can be distinguished from the present case. Some are distinguishable because they involved a sole proprietorship rather than a corporation, so that there was no "employer" for which the sole proprietor could be an "employee." *E.g., Meredith v. Time Ins. Co.*, 980 F.2d 352 (5th Cir.1993); *Fugarino v. Hartford Life and Acc. Ins. Co.*, 969 F.2d 178 (6th Cir.1992), *cert. denied*, 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993); *Giardono v. Jones*, 867 F.2d 409 (7th Cir.1989). In fact, the *Madonia* court distinguished these cases on the same basis. 11 F.3d at 449 n. 2.[6] Others are distinguishable because there were no employee participants other than the sole shareholder to bring the plan within ERISA's coverage. *E.g., In re Hall*, 151 B.R. 412 (Bankr.W.D.Mich.1993); *In re Witwer*, 148 B.R. 930 (Bankr.C.D.Cal.1992). In at least one case, a court did rely on 29 C.F.R. § 2510.3–3 to hold that even when other employee participants exist, a sole shareholder cannot be a participant in an ERISA plan. *E.g., Kelly v. Blue Cross & Blue Shield of Rhode Island*, 814 F.Supp. 220, 226–27 (D.R.I.1993). However, as explained above, this conclusion is inconsistent with the guidance of the Eighth Circuit in *Robinson*, 58 F.3d at 369.

█ In fact, the bankruptcy court seemed to recognize that a sole shareholder can be a participant in an ERISA plan when there are other employee participants. *See* Order of Bankruptcy Court dated Dec. 22, 1995, at n. 2, 4, 5. In ruling that the plans are not subject to ERISA for a lack of eligible employee participants, the bankruptcy court relied upon the current status of the plans. However, as explained above, there is no distinction between "1976 plans" and "1995 plans." Furthermore, even though there are not currently any other employee participants, Craig and his ex-wife remain as partic-

---

4. The Eighth Circuit reiterated this viewpoint in *Prudential Ins. Co. of America v. Doe*, 76 F.3d 206, 209 (8th Cir.1996). In facing a similar case, the court relied upon its holding in *Robinson*, but also cited *Madonia* in stating that "we would likely find that Doe [the controlling shareholder of a corporation] is an 'employee' and thus a 'participant' under the framework of ERISA".
 *Accord Eichhorn, Eichhorn & Link v. Travelers Ins. Co.*, 896 F.Supp. 812, 814–15 (N.D.Ind. 1995); *Grimo v. Blue Cross and Blue Shield of Vermont*, 899 F.Supp. 196, 202 n. 6 (D.Vt.1995); *McConocha v. Blue Cross and Blue Shield of Ohio*, 898 F.Supp. 545, 548 (N.D.Ohio 1995).

5. The bankruptcy court seemed to rely in part upon a distinction between an employee "pension" benefit plan and employee "welfare" benefit plan to reject the conclusion of Madonia as agreed with in *Robinson*. *See* Order of Bankruptcy Court dated Dec. 22, 1995, at 3–4. However, none of the cases cited by the bankruptcy court in its discussion rely on such a distinction.

Nor does 29 U.S.C. § 2510.3–3 make such a distinction for the purpose of defining which plans are subject to ERISA. Aside from the key difference in the types of benefits provided by the two plans (see n. 3), the major distinction is that welfare plans are not subject to the strict vesting requirements of pension plans. *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995); *Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1516 (8th Cir.1988), *cert. denied*, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).

6. Other cases distinguishable on the basis of business form include *Brech v. Prudential Ins. Co. of America*, 845 F.Supp. 829 (M.D.Ala.1993) (sole proprietorship); *Madden v. Country Life Ins. Co.*, 835 F.Supp. 1081 (N.D.Ill.1993) (partnership); and *In re Orkin*, 170 B.R. 751 (Bankr.D.Mass. 1994) (sole proprietorship).

ipants. A "participant" is an employee or former employee who is or may become eligible to receive a benefit from a plan. 29 U.S.C. § 1002(7). Craig and his ex-wife are former employees of the employer, James M. Craig, M.D., P.C.. Their benefits have vested yet never been paid out; thus, they are eligible to receive a benefit from the plans. *See also* 29 C.F.R. § 2510.3–3(d) (excluding as a participant anyone whose benefits have been paid out or who has had a one-year break in service with no vesting). If Craig and his ex-wife were eligible to participate when there were other employees, they should still be eligible to participate even though the other employees' interests have been paid out. *See In re Kaplan,* 162 B.R. 684, 695 (Bankr.E.D.Pa.1993), *aff'd,* 189 B.R. 882 (E.D.Pa.1995) (explaining that "the common thread in the post-[*Shumate*] cases which held that a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA, is that, in each case, the debtor (or the debtor and his spouse) were the only participants that the respective plans *ever* had") (emphasis added).[7] In fact, as the *Kaplan* court observed, the debtor in Shumate was similarly situated to Craig; he was the only remaining participant after all other employees had been paid out. *Id.* at 693 (citing *Shumate,* 504 U.S. at 754–56, 112 S.Ct. at 2245). Yet the *Shumate* Court assumed the plan was ERISA-qualified and excluded the debtor's interest from the bankruptcy estate. *Id.* Thus, because there were formerly other employee participants in Craig's plans, the plans should remain subject to ERISA and Craig should remain as a participant.

For the reasons discussed above, this court concludes that the pension and profit-sharing plans in this case are subject to ERISA. This does not mean that they are "ERISA-qualified," however. As explained above, in order to be excluded from the bankruptcy estate, interests in an ERISA plan must also be subject to an enforceable anti-alienation provision in the plan itself, and the plan must be qualified under the Internal Revenue Code. *Hall,* 151 B.R. 412, 417–20 (Bankr. W.D.Mich.1993). The bankruptcy court did not address the question of IRC qualification. This court cannot do so in the first instance. *See Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir.1987) ("If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination."). This is particularly true when there is a lack of documentary evidence on the issue. *In re Muncrief,* 900 F.2d 1220, 1222 (8th Cir.1990). In this case, the principal evidence concerning IRC qualification is the testimony of Craig's expert.

Because a remand is necessary anyway, this court declines to take any position on which plan documents are in effect.[8] This is relevant to the question of which anti-alienation provision is in effect. Finally, this court will not decide whether, even if Craig's interests in the plans do come into the bankruptcy estate, they would qualify for an exemption.

### Conclusion

**IT IS ORDERED** that the decision of the Bankruptcy Court is **REVERSED,** and the case is **REMANDED** to the Bankruptcy Court for further proceedings in accordance with this order.

---

7. This statement does not take *Kelly* into account, 814 F.Supp. 220, but again, that case is inconsistent with the guidance of the Eighth Circuit in *Robinson,* 58 F.3d at 369.

8. The 1995 plan amendments were executed by Craig as the president of a non-existent corporation, but his expert testified that Craig had the power to amend them as a successor business entity. (Tr. at 100.)