Gerald GRIMO and Gerald Grimo, Special Administrator of the Estate of Diana Grimo bnf Diana Grimo, Plaintiffs–Appellants,

v.

BLUE CROSS/BLUE SHIELD, OF VERMONT, Defendant–Appellee.

No. 1745, Docket 93–9269.

United States Court of Appeals, Second Circuit.

Argued May 27, 1994.

Decided Sept. 9, 1994.

Eric R. Benson, Burlington, VT (Bloomberg, Oettinger & O'Hara, of counsel), for plaintiffs-appellants.

Nancy J. Creswell, Montpelier, VT (Bernard D. Lambek, Paterson & Walke, P.C., of counsel), for defendant-appellee.

Before: VAN GRAAFEILAND, WINTER, and ALTIMARI, Circuit Judges.

1. Appellant contends, apparently without verification in the record, that Twin State is a subchapter-S corporation owned by Diana Grimo and her parents.

WINTER, Circuit Judge:

Gerald Grimo, in his personal capacity and as the special administrator of Diana Grimo's estate, appeals from Judge Billings's grant of summary judgment in favor of Blue Cross/Blue Shield of Vermont ("Blue Cross"). Grimo had a health insurance policy with Blue Cross. After Blue Cross denied coverage of certain medical expenses incurred by his wife, Grimo filed a complaint in Vermont state court, asserting six state law claims against Blue Cross. Blue Cross subsequently removed the case to the district court on the grounds that Grimo's policy was part of an ERISA plan. Although summary judgment was granted on the merits, the dispositive issue on this appeal is the district court's denial of Grimo's motion to remand the case to state court. Because the factual record is insufficient to sustain the district court's denial of that motion, we vacate the judgment and remand.

## BACKGROUND

Whether the Grimos' policy with Blue Cross is an ERISA plan turns on the structure and funding of the program under which the policy was offered. The record regarding that structure and funding is sparse and consists almost entirely of an informal and equivocal admission. Nonetheless, it does reveal the following. Diana and Gerald Grimo were both employees of Twin State Typewriter, Inc. ("Twin State") of White River Junction, Vermont.[1] Twin State came to subscribe, through the Small Business Service Bureau, to a multiple-employer trust ("MET") that offered health insurance from Blue Cross to Twin State's employees. Diana Grimo was covered as a dependent under a Blue Cross medical benefit policy issued to Gerald. Although the parties dispute both the structure and funding of the program under which the policy was obtained, they made no formal proffer of evidence on this issue.[2]

2. Grimo contends that the employees' purchase of the insurance was entirely voluntary and that Twin State did not administer the insurance in any way or attempt to take any pertinent tax deduction.

As discussed more fully *infra,* the role played by an employer in the obtaining of health insurance is important to a determination of whether that insurance is an ERISA plan. The only evidence before the district court when it denied Grimo's motion to remand the case to state court was an apparent admission by Grimo's counsel concerning Twin State's contribution to the costs of its employees' health insurance. At oral argument on February 19, 1993, Grimo's counsel appeared to concede that, at least for the "principals" of the corporation, Twin State had paid 50% of the cost of the health insurance for a period of a year or two ending roughly a year before the hearing. Grimo's counsel further stated that he "believe[d]" that Twin State, again at least for its principals, had paid 100% of the costs of the insurance in the first year it was offered.[3] He also appeared to claim, however, that at the time of the hearing, all employees of Twin State were paying the full costs of their insurance.

Other relevant events are more clearly disclosed in the record. Diana Grimo suffered from a medical condition that manifested itself as a severe intolerance to food. The parties sharply disputed the proper diagnosis and treatment of Diana Grimo's affliction. In the fall of 1992, Diana Grimo contacted Blue Cross regarding her plans to seek treatment from Dr. William J. Rea, a physician with privileges at Tri–City Hospital in Dallas, Texas. Blue Cross approved three days of in-patient care, and Diana Grimo was admitted to Tri–City Hospital on October 27, 1992.

At the conclusion of the three-day period, Dr. Rea apparently determined that Diana Grimo should receive additional treatment at the hospital. On that day, Dr. William E. Allard, Jr., Blue Cross's medical director,

spoke with one of Dr. Rea's colleagues and advised him that Blue Cross would not cover Diana Grimo's continued in-patient care. The Grimos were subsequently notified by letter from Blue Cross that Blue Cross was denying continued in-patient coverage after October 30, 1992 on the grounds that such treatment was not "medically necessary."

The Grimos exercised their right to request a formal review of this decision with Blue Cross's Claim Appeal Committee. After several hearings, the committee upheld the denial of benefits based upon the exclusions in Grimo's policy for services that are "not medically necessary," "experimental/investigative in nature," and "for inpatient confinement for environmental change." The Grimos then filed the present action in Vermont state court, pleading six state law claims against Blue Cross based on the denial of coverage. Blue Cross, pursuant to 28 U.S.C. § 1441, removed the case to federal court on the ground that Gerald Grimo's policy with Blue Cross was part of an ERISA plan. The district court, after conducting a brief hearing at which no witnesses were called, denied Grimo's motion to remand the case to state court, concluding that Gerald Grimo's policy was part of an "employee welfare benefit plan" under ERISA, 29 U.S.C. § 1002.

The district court subsequently denied Grimo's request for injunctive relief, dismissed five of the six state law claims on the ground of ERISA preemption, construed Grimo's sixth claim as an ERISA claim, and granted Blue Cross summary judgment on this claim on the grounds that Blue Cross's denial of benefits under the policy was not arbitrary or capricious. This appeal followed.[4]

---

3. Subsequent to oral argument, we requested and received additional letter briefs from the parties concerning, among other things, the state of the factual record as it bears on the district court's denial of the motion to remand. Grimo's letter argued that his counsel's statements during this colloquy are "consistent with [his claim that Gerald Grimo paid 100% of the premiums of his insurance] and reflect the status of the employer's payment of insurance premiums with employee's funds as versus the employee's direct payment of those premiums." The letter stated

also that the plaintiffs "vigorously dispute" the assertion "that the employer paid the medical insurance benefits of the principals of the corporation, strictly with corporate funds."

4. During the course of these proceedings and after the denial of benefits, Diana Grimo apparently continued to receive treatment. She died on October 16, 1993, and her husband, as special administrator of her estate, was substituted for her in this litigation.

DISCUSSION

■ As a preliminary matter, we observe that on the present record, it seems clear that Ms. Grimo was a desperately sick woman who, even if she had sought conventional care, would have required hospitalization and extensive professional attention. It also seems clear that some portion of the cost of her stay at Tri–City was conventional care, or the equivalent thereof, that she would have received in the course of any hospitalization for a serious illness and a denial of reimbursement for any part of such cost may be inconsistent with the Blue Cross policy. Neither the Blue Cross Appeal Committee nor the district court made an effort to apportion costs, however. We proffer no view on this issue, other than to flag it for consideration should this matter remain in federal court. Although Grimo raises a number of arguments on appeal, we need consider only his threshold contention that the district court erred in denying his motion to remand the case to state court. The district court denied the motion to remand based on the court's finding that Grimo's policy was part of an "employee welfare benefit plan," as that term is defined in ERISA, 29 U.S.C. § 1002(1) (1988). Civil suits by beneficiaries to recover benefits under an ERISA plan can be brought only under the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a). 29 U.S.C. § 1144(a) (1988); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987). Assertion of ERISA preemption permits removal of the beneficiary's case from state court, even if the complaint has pleaded only state law claims. *See Metropolitan Life Ins. Co.*, 481 U.S. at 63–67, 107 S.Ct. at 1546–48; *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 10 (2d Cir.1992). In such instances, however, the defendant bears the burden of demonstrating the propriety of removal. *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir.), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976); *Thomas v. Burlington Indus.*, 763 F.Supp. 1570, 1576 (S.D.Fla.1991); *Isaacs v. Group Health, Inc.*, 668 F.Supp. 306, 311 (S.D.N.Y.1987).

ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits....

29 U.S.C. § 1002(1) (1988). The term "employer" includes "a group or association of employers," such as a MET, acting on behalf of its members. 29 U.S.C. § 1002(5) (1988).

■ "[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (*en banc*); *see also Randol v. Mid–West Nat'l Life Ins. Co. of Tennessee*, 987 F.2d 1547, 1550 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 180, 126 L.Ed.2d 139 (1993). However, the "plan, fund, or program" need not be a formal written document. *Donovan*, 688 F.2d at 1372–73. In fact, "[s]ome essentials of a plan, fund, or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or program—e.g., an insurance company's procedure for processing claims...." *Id.* at 1373 (citations omitted); *see, e.g., Randol*, 987 F.2d at 1550–51 (employer "maintained" plan through contributions to premiums notwithstanding absence of documentation specifying employer as applicant or beneficiary).

■ Where an employee receives medical benefits through an insurance policy purchased through a MET and the employer's practice and the policy terms are sufficiently detailed to constitute a "plan, fund, or program," the inquiry turns to whether the employer's involvement was substantial enough to have "established or maintained" the plan. *Cf. Donovan*, 688 F.2d at 1375. While "the purchase of insurance does not conclusively

establish a plan, fund, or program, ... the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Id.* at 1373.

■ Pursuant to its authority under 29 U.S.C. § 1135, the Department of Labor ("DOL") has promulgated regulations designed to "clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan' [in ERISA] :.. by identifying certain practices which do not constitute employee welfare benefit plans." 29 C.F.R. § 2510.3–1(a)(1) (1993). Thus, 29 C.F.R. § 2510.3–1(j) provides:

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

Group health insurance programs that meet each of the regulation's four criteria are excluded from ERISA coverage. *Fugarino v. Hartford Life & Accident Ins. Co.,* 969 F.2d

178, 184 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 241 n. 6 (5th Cir.1990). This provision thus provides a "safe harbor" allowing group insurance programs to avoid falling within ERISA. *Smith v. Jefferson Pilot Life Ins. Co.,* 14 F.3d 562, 568 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 57, —— L.Ed.2d —— (1994). Of course, a plan that does not meet the four requirements of this regulation must still be an "employee welfare benefit program" under 29 U.S.C. § 1002(1) to be covered by ERISA. *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976–77 (5th Cir.1991).

■ We cannot determine whether Grimo's policy was excluded from the definition of an ERISA plan under 29 C.F.R. § 2510.3–1(j) because of the sparse factual record. The district court made no statement of pertinent, undisputed facts prior to denying Grimo's motion to remand, nor did it state reasons for concluding that an ERISA plan existed. *Cf. Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452–53 (5th Cir.1991) (lack of factual findings frustrates review of district court finding of ERISA plan).

Indeed, the entire factual record on this question consists of an ambiguous admission by Grimo's counsel that Twin State paid some of the costs of some of its employees' insurance at some time in the past. In light of the considerable uncertainty surrounding even this remark, the record gives no basis to conclude either that the alleged plan falls outside the safe harbor regulation or that it is an "employee welfare benefit plan" under Section 1002(1).

Blue Cross seems to argue that Twin State's contribution in any amount to any of its employees' costs of insurance at any time is enough to deprive an employer foreveraftter of the safe harbor of the DOL regulations. We are unpersuaded.[5]

---

**5.** Although we requested additional letter briefs, the parties were unable to identify any cases discussing this issue. At least one court seems to have adopted Blue Cross's reading without any analysis. *See Foxworth v. Durham Life Ins. Co.,* 745 F.Supp. 1227, 1231 (S.D.Miss.1990). We

have not independently discovered any cases discussing this issue, and the *Foxworth* opinion, which merely asserts as an additional ground for its conclusion that 29 C.F.R. § 2510.3–1(j)(1) is met by a short period of contributions without discussion, offers little guidance.

First, the plain language of 29 C.F.R. § 2510.3–1(j)(1) does not compel this result. In fact, the regulation's use of the present tense ("No contributions *are made....*") strongly suggests that past payments do not forever preclude the application of the safe harbor provision. Second, Blue Cross's reading of the regulation is pointlessly unforgiving. Blue Cross has offered no reason why an employer who at one time makes a single contribution is forever deprived of the safe harbor even if the employer has subsequently changed its program to provide no funding for its employees' coverage.

Moreover, even were we to conclude that Grimo's counsel's admission of some past contributions vitiated application of the safe harbor regulation, we still could not conclude on this factual record that the alleged plan here is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). First, to determine that Twin State's or the MET's offering medical insurance constituted a "plan, fund, or program" we must determine that a reasonable person could ascertain, among other things, the source of financing for the program. *See Donovan,* 688 F.2d at 1373; *Randol,* 987 F.2d at 1550. On the existing record, the source of financing in the instant matter is unclear.

Second, the employer must have "established or maintained" the plan. 29 U.S.C. § 1002(1). It can hardly be argued that evidence that an employer made a contribution to the insurance costs of some of its employees sometime in the past demonstrates as a matter of law that an employer has "maintained" an ERISA plan. At least where the employer has made a decision not to fund the plan for the indefinite future and has made no contributions during the period in which the triggering event may have implicated the policy's coverage, a past contribution alone does not indicate that an ERISA plan has been "maintained." Similarly, a past contribution to any of the covered employees does not itself demonstrate that the employer "established" the plan. While Grimo's counsel did acknowledge that he believed that Twin State paid the entire costs of coverage for its principals in the first year of the alleged plan's existence, the record discloses neither the number of Twin State's employees nor the number or identity of those employees who were also principals. In such circumstances, this bare admission reveals little. The defendant seeking to remove bears the burden of demonstrating the propriety of removal. In light of the uncertainty surrounding Grimo's counsel's "belie[f]" and the lack of supporting evidence to provide context for his remark, Blue Cross has not satisfied its burden of showing that Twin State "established" an ERISA plan.

We emphasize that we hold only that any employer contribution made in the past, no matter how long ago or under what circumstances, does not preclude application of 29 C.F.R. § 2510.3–(j)(1) or demonstrate that an employer has "established or maintained" the plan under 29 U.S.C. § 1002(1). Further elaboration of the significance of prior contributions must await a more complete factual record.

### CONCLUSION

We vacate the judgment and remand the case for further proceedings.