Carol P. MARCELLA, Plaintiff–
Appellant,

v.

CAPITAL DISTRICT PHYSICIANS'
HEALTH PLAN, INC.,
Defendant–Appellee.

Docket No. 99–7560.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 10, 2002.

Decided: June 5, 2002.

Frances K. Browne, Rosenman & Colin LLP, New York, N.Y. (Martin E. Karlinsky, James S. Frazier, on the brief), for the appellant.

Brian M. Culnan, Iseman, Cunningham, Riester & Hyde, LLP, Albany, NY, for the appellee.

Before: WALKER, Chief Judge, F.I. PARKER, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Plaintiff Carol Marcella purchased health insurance coverage from defendant Capital District Physicians' Health Plan, Inc. ("CDPHP") under a group health policy offered through the Latham Area Chamber of Commerce (the "Chamber"). After defendant refused to pay for plaintiff's out-of-plan surgery for a brain tumor, plaintiff sued CDPHP in New York Supreme Court raising various state-law claims. CDPHP removed to the United States District Court for the Northern District of New York, citing ERISA preemption as the basis for federal jurisdiction. The district court (Kahn, J.) agreed with defendant that plaintiff's claims were preempted by ERISA, denied plaintiff's motion to remand, and granted CDPHP summary judgment on all claims. We hold that because plaintiff's claims did not relate to an ERISA plan, there was no basis for federal jurisdiction. Accordingly, we reverse and remand with instructions to return this case to state court for further proceedings.

## BACKGROUND

From 1981 through approximately April 1997, plaintiff, a resident of Schenectady County, New York, worked as a real estate broker affiliated with a franchise of Prudential Realty, known first as "Blake Realty" and then "Manor Homes by Blake" (hereinafter "Prudential"). Beginning in 1988, plaintiff and Prudential entered into an annually-renewed series of "Statements of Understanding" which declared plaintiff to be an independent contractor and recited various terms of their relationship (such as paying plaintiff only on commission and allowing her to set her own work hours).

Prudential was, at all times, a member of the Chamber. CDPHP, a health services provider incorporated in New York, entered into a contract with the Chamber by which CDPHP made available its "Emerald 15" HMO plan (the "Chamber Plan") to members of the Chamber and their employees. The Chamber was named as the policyholder under the contract and was responsible for collecting premiums on behalf of the plan subscribers and forwarding them to CDPHP. The Chamber also set the rules (subject to CDPHP approval) by which individuals would be deemed eligible to participate in the plan.

In June 1994, plaintiff applied to enroll, and was accepted by CDPHP, in the Chamber Plan. The application form had a space for "Employer," in which the name "Prudential" was entered, but plaintiff claims she left this space blank and does not know who filled it in. It is undisputed that, from that point on, plaintiff was a subscriber to the Chamber Plan. She states, however, that she, not Prudential, paid all of her own premiums to the Chamber for remittance to CDPHP, and defendant does not dispute this.

In 1995, plaintiff began operating a photoglazing business under the name of "Lasting Memories," and she (d/b/a Lasting Memories) joined the Chamber as an individual member in October 1995. As far as can be determined from the record, defendant was not notified that plaintiff had joined the Chamber. Plaintiff claims that from that point on she had access to the Chamber Plan by virtue of her own membership in the Chamber, not through Prudential.

In February 1996, plaintiff began suffering from headaches and consulted CDPHP-participating physicians in Albany, who told her that she suffered from a brain tumor (meningioma) and advised surgical removal. Not satisfied that the in-plan physician was sufficiently experienced to perform the operation, plaintiff arranged for the removal of her tumor at Brigham & Women's Hospital in Boston, which is not part of the CDPHP network. Plaintiff requested in advance that defendant approve the out-of-plan operation, but CDPHP refused. Informed that her surgery needed to be performed immediately, plaintiff took out a loan to pay for it herself. Following the successful removal of her tumor in Boston, plaintiff sought reimbursement from defendant, which denied the claim on the ground that any out-of-plan surgery must be approved ahead of time. Plaintiff's intraplan appeals were all denied.

Having exhausted her administrative remedies, plaintiff filed suit against CDPHP on March 19, 1997, in New York Supreme Court, Schenectady County, claiming breach of contract, intentional infliction of emotional distress, and prima facie tort, all under New York law. No ERISA or other federal law claim was made. On April 24, 1997, defendant removed the case to federal district court on the ground of ERISA preemption.

Plaintiff moved to remand, and the motion was referred—not by consent of the

parties—to Magistrate Judge David Hurd. On August 25, 1997, Magistrate Judge Hurd issued an order denying the motion to remand without prejudice to refiling "upon submission of additional evidence regarding plaintiff's relationship with Prudential Manor Homes, Inc." Plaintiff renewed the motion in September 1997. Following court-ordered limited discovery (including a deposition of plaintiff) on the relationship between plaintiff and Prudential, Magistrate Judge Hurd again issued an order denying the motion to remand. The order first stated, with no explanation, that the Chamber Plan was a "qualified ERISA employee welfare benefit plan." Second, the order stated that, because plaintiff's application to CDPHP had "Prudential" listed as her "Employer," and because she became a member of CDPHP through her affiliation with Prudential, she was estopped from asserting that she was not an employee of Prudential and therefore a valid participant in the Chamber Plan. The magistrate judge held that therefore plaintiff's claims necessarily arose under ERISA and that the district court had jurisdiction. Plaintiff did not file any objections to this ruling with the district court.

In May 1998, defendant moved for summary judgment on all claims, asserting that plaintiff's state-law claims must all be dismissed as preempted by ERISA. In a decision dated April 7, 1999, Judge Kahn granted the motion and dismissed all claims. *Marcella v. Capital Dist. Physicians Health Plan*, 47 F.Supp.2d 289 (N.D.N.Y.1999). Judge Kahn first held that Magistrate Judge Hurd's decisions in the remand order—namely, that the Chamber Plan was a qualified ERISA plan, that plaintiff was an employee of Prudential, and that jurisdiction was therefore proper—were "law of the case." Noting, however, that Magistrate Judge Hurd had not specifically addressed whether

*each* of plaintiff's claims was preempted by ERISA, Judge Kahn addressed each one in turn and found them preempted, rejecting plaintiff's argument (apparently the sole one raised in opposition to the motion) that CDPHP should be deemed an insurance company and that therefore ERISA's "savings clause," 29 U.S.C. § 1144(b)(2)(A), spared plaintiff's claims from preemption. This appeal followed.

## DISCUSSION

### I. Removal Jurisdiction and ERISA Preemption

We begin by reiterating the basic principles of federal removal jurisdiction as they relate to the special case of ERISA. A defendant may remove from state court to federal court "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Normally, a defense that plaintiff's claims are preempted by federal law will not suffice to confer federal question jurisdiction, which must be determined by reference to the allegations that "appear on the face of a well-pleaded complaint." *Plumbing Indus. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 66 (2d Cir.1997); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."). However, in the case of state-law claims falling within the scope of the civil enforcement provisions of § 502 of ERISA, Congress has manifested its intent that such claims be removable, on the ground that such claims are "of necessity so federal in character that [they] arise[ ] under federal law for purposes of 28 U.S.C. § 1331." *Plumbing Indus. Bd.*, 126 F.3d at 66; *see also Taylor*, 481 U.S.

at 63–67, 107 S.Ct. 1542. In such "complete preemption" cases, the burden is on the defendant, as the party asserting federal jurisdiction, to demonstrate the propriety of removal. *Grimo v. Blue Cross/ Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir.1994); *see also Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir.1998) ("It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

■ In order for a claim to be completely preempted by ERISA so as to support removal, the defendant must demonstrate that "(1) the state law cause of action is preempted by ERISA, and (2) that cause of action is 'within the scope' of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a)." *E.W. Howell*, 126 F.3d at 66. In this case, plaintiff does not dispute that, if her policy with CDPHP was part of an ERISA plan, not only are her state-law claims preempted by ERISA § 514(a), 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan"), but also that her claim for benefits under that plan would be within the scope of the civil enforcement provisions of § 502. Thus, the sole question upon which the jurisdiction of the district court turns is whether plaintiff's health insurance policy was part of an ERISA plan.

## II. Preliminary Issues

Defendant first argues that we need not determine the answer to this question, because (1) by failing to object to the Magistrate Judge's ruling denying her remand motion, plaintiff has waived all objections to the findings of fact and conclusions of law therein, and (2) the district court properly applied the law of the case doctrine to the magistrate judge's findings with respect to subject matter jurisdiction. Neither contention has merit.

■ A district court may refer, without the parties' consent, both nondispositive and dispositive motions to a magistrate judge for decision or recommendation, respectively. 28 U.S.C. § 636; Fed.R.Civ.P. 72. Objections to either the magistrate judge's order or recommendation must be filed within ten days of service in order to receive review from the district court. Rule 72(a) states that, as to decisions with respect to nondispositive motions, "a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." Although there is no similar provision in Rule 72(b) for recommendations as to dispositive motions, we have nonetheless applied a similar rule. *See FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir.1995) (addressing failure to object to magistrate judge's recommendation under Rule 72(b) and noting that "[o]ur rule is that 'failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision' "). Defendant is correct, therefore, that failure to object to a magistrate judge's decision or recommendation generally forfeits the right to present those objections for appellate review.

■ It is equally true, however, that the federal courts are creatures of limited jurisdiction and that jurisdiction may not be conferred in any way by the parties— including by means of waiver or estoppel. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it.") (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55

S.Ct. 162, 79 L.Ed. 338 (1934)); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 (2d Cir.1996) (failure to object to subject matter jurisdiction below " 'does not act to confer [federal] jurisdiction ... since a challenge to subject matter jurisdiction cannot be waived' ") (quoting *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 605 (2d Cir.1988)) (alteration in original); *Indep. Investor Protective League v. SEC*, 495 F.2d 311, 313 (2d Cir.1974) (where question "goes to our jurisdiction, all defenses in the nature of waiver or estoppel are precluded") (citation omitted). Although we have apparently never applied this principle specifically in relation to a failure to object to a magistrate judge's order, we see no reason why the principle has any less force here. Therefore, the plaintiff's failure to file timely objections to the magistrate judge's jurisdictional finding in no way diminishes our power—indeed, our obligation—to conduct an independent inquiry into that question.

■ For the same reason, the district court's application of the law of the case doctrine is irrelevant to our review of subject-matter jurisdiction. Even if the district court applied the doctrine correctly— a point upon which we express no opinion—it would make no more difference to our determination of subject-matter jurisdiction than if the district court had determined the issue *de novo*. Moreover, even if our "special obligation" to review subject-matter jurisdiction were not implicated, "a district court's adherence to law of the case cannot insulate an issue from appellate review." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 593 (2d Cir. 1991) ("Application of the [law of the case] doctrine at the ... district court level[ ] ... does not preclude *us* from conclusively determining the issue ...."); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478.6 (2d ed. 2002) ("[A] lower court's refusal to reexamine the law of the case established by its own earlier ruling does not defeat appellate review.").

## III. Existence of an ERISA Plan

It is clear that plaintiff's participation in defendant's health plan at the time of her injury was either by virtue of her association with Prudential, which was a member of the Chamber, or through her own Chamber membership (d/b/a Lasting Memories). Plaintiff does not dispute that her *initial* enrollment was achieved through her Prudential relationship; she contends, however, that once she joined the Chamber herself she continued her participation solely through Lasting Memories, independent of any association with Prudential. Defendant has not addressed this issue directly before this Court but implicitly disputes plaintiff's claim. Defendant asserts that "it was only because of her association with Prudential that Ms. Marcella was eligible to participate" in the health plan. We need not resolve this question because, under either scenario, plaintiff was not a participant in an ERISA plan.

■ We first address defendant's contention that, as the magistrate judge found, the Chamber Plan is itself an ERISA plan. To answer this question, we must return to ERISA's definition of "employee benefit plan," which states that such a plan must be, as relevant here, "established or maintained by an employer." 29 U.S.C. § 1002(1). There is no dispute that the Chamber Plan was established and maintained by the Chamber; thus, the threshold question is whether the Chamber may be considered an "employer" under ERISA. We find that it cannot.

It is true that under ERISA the term "employer" includes "a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). However, there seems to be no dispute that Chamber membership is open not only to businesses with employees but also to sole proprietorships without employees and to individuals such as plaintiff, neither of which can logically be considered an "employer" (unless they are acting indirectly on behalf of someone who is an employer). *See id.; Meredith v. Time Ins. Co.*, 980 F.2d 352, 358 (5th Cir.1993) ("Under the controlling definition, [plaintiff] is not an employer because she has no employees...."). The plain language of the statute would, therefore, seem to preclude finding that the Chamber is "a group or association of employers," because not all members of the Chamber are employers.

Whatever ambiguity there might be in ERISA on this point (and defendant has not suggested that there is any), we are supported in our conclusion by the Department of Labor, the agency charged with interpretation and enforcement of the statute. Plaintiff points to several Department of Labor Opinion Letters which assert that such an association—i.e., one not limited solely to employers—does not meet the ERISA definition of "employer." *See* DOL Opinion Letter 98–08A, 1998 WL 733697 (E.R.I.S.A.), 1998 ERISA LEXIS 12 (Oct. 9, 1998) ("Based on your statements that membership in [organization] is not limited to employers, it is our position that [organization] is not an employer within the meaning of section 3(5) of Title I of ERISA"); DOL Opinion Letter 95–01A, 1995 WL 55884 (E.R.I.S.A.), 1995 ERISA LEXIS 1 (Feb. 13, 1995) ("The voting membership of [organization] includes self-employed owners and trainers who are not necessarily employers of common-law employees. Eligibility ... therefore is not limited to 'employers'.... [W]e cannot conclude that [organization] is an employer as defined in ERISA Section 3(5)...."); DOL Opinion Letter 94–07A, 1994 WL 84835 (E.R.I.S.A.), 1994 ERISA LEXIS 11 (Mar. 14, 1994) ("[T]he Department cannot conclude that [the organization] is a bona fide group or association of employers within the meaning of Section 3(5) of ERISA.... [I]t appears that membership eligibility in [the organization] is not limited to 'employers.' "). Even though not formally promulgated as regulations, these opinion letters, as the views of the agency charged with implementing ERISA, are at least " 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance,' " *Bragdon v. Abbott*, 524 U.S. 624, 642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (quoting *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see also MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 186 n. 9 (5th Cir.1992) (according DOL Opinion Letters on ERISA *Skidmore* deference), and we have often relied on them for support,[1] *see, e.g., Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 288–89 (2d Cir.2000); *Gallione v. Flaherty*, 70 F.3d 724, 728–29 (2d Cir. 1995); *Levy v. Local Union Number 810*, 20 F.3d 516, 519–20 (2d Cir.1994); *Harris*

---

1. Because the Department of Labor has the power to issue administrative interpretations of ERISA which carry the force of law, *see* 29 U.S.C. § 1135, the lack of formal notice-and-comment procedures attending these DOL Opinion Letters does not necessarily foreclose the possibility that they should be afforded *Chevron* deference. *See United States v. Mead*

*Corp.*, 533 U.S. 218, 230–31, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). However, because we find the Department of Labor's position in accord with our interpretation of ERISA in any event, we need not decide whether we would be obliged to defer to these opinion letters if we read ERISA differently than the agency does.

*Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 970 F.2d 1138, 1144–45 (2d Cir.1992).

■ In agreement with these opinion letters, we hold that a group or association, such as the Chamber, that contains non-employers cannot be an "employer" within the meaning of ERISA. Therefore, the Chamber Plan is not itself an ERISA plan.[2] It is nonetheless possible that the Chamber Plan—or, rather, the terms of the policy offered by CDPHP to Chamber members—can form *part* of an ERISA plan should a Chamber member that is an employer choose to provide its employees with access to the Chamber Plan. *See Pegram v. Herdrich,* 530 U.S. 211, 223, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("[W]hen employers contract with an HMO to provide benefits to employees subject to ERISA, the provisions of documents that set up the HMO are not, as such, an ERISA plan, but the agreement between an HMO and an employer who pays the premiums may, as here, provide elements of a plan by setting out rules under which beneficiaries will be entitled to care."); *Grimo,* 34 F.3d at 151 (where employee receives benefits through policy purchased by employer, "employer's practice and the policy terms" may constitute plan).

If plaintiff's participation in the health plan was through her Lasting Memories membership in the Chamber, then there was no ERISA plan for the simple reason that, under regulations promulgated by the Department of Labor and endorsed by this Court, a sole proprietor is not an "employee" for purposes of ERISA, *see* 29 C.F.R. § 2510.3–3(c)(1) ("An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse."), and a plan under which no employees are participants is not an "employee benefit plan," *see id.* § 2510.3–3(b); *Schwartz v. Gordon,* 761 F.2d 864, 867–69 (2d Cir.1985).

■ If plaintiff's participation in the health plan was through her association with Prudential, then there is obviously the possibility that, as asserted by the defendant and found (albeit by estoppel) by the district court, Prudential was an "employer" within the meaning of ERISA. We find it unnecessary to decide this point, because even if Prudential and plaintiff were in an employer-employee relationship, Prudential did not "maintain or establish" the plan to "provide benefits" for its employees with the meaning of 29 U.S.C. § 1002(1). *See Grimo,* 34 F.3d at 151 ("Where an employee receives medical benefits through an insurance policy . . . and the employer's practice and the policy terms are sufficiently detailed to constitute a "plan, fund, or program," the inquiry turns to whether the employer's involvement was substantial enough to have 'established or maintained' the plan.").

One approach to determining whether Prudential maintained or established a

2. Defendant's reliance on *Nerney v. Valente & Sons Repair Shop,* 66 F.3d 25 (2d Cir.1995), a case also involving a CDPHP policy purchased by a local chamber of commerce, is misplaced. The question before us there was not whether the chamber of commerce in that case could be an "employer" or its offering of access to health insurance an ERISA plan; rather, the fact that the terms of the CDPHP policy were *part* of an ERISA plan was as-

sumed, and the only question was whether the terms of that policy had been followed. *See id.* at 28. As we note in this case, the terms of the Chamber Plan can be part of an ERISA plan if a member of the Chamber who meets the statutory definition of "employer" incorporates the Chamber Plan in its plan to offer health benefits to its employees. Nothing we hold today, therefore, is inconsistent with our decision in *Nerney.*

plan to provide for its employees is to look at the Department of Labor regulations which clarify the type of plan which does *not* qualify under ERISA. Among these is a "safe harbor" regulation pertaining to group health insurance:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j).

Defendant has offered no argument, much less evidence, to disprove plaintiff's contention that all four of these elements are satisfied with respect to Prudential.[3] Moreover, plaintiff has offered specific evidence to support application of the "safe harbor"—for example, cancelled checks

showing that she, not Prudential, paid her premiums to defendant, a point defendant does not dispute. Defendant's sole argument is that plaintiff failed to raise the applicability of this "safe harbor" regulation in the district court and that therefore we should not apply it here. Even if we did not apply the regulation of its own force, however, we would still be required to determine whether Prudential had "maintained or established" a plan under the terms of ERISA itself. *Cf. Grimo,* 34 F.3d at 152 ("Of course, a plan that does not meet the four requirements of [the safe harbor regulation] must still be an 'employee welfare benefit program' under 29 U.S.C. § 1002(1) to be covered by ERISA."). In undertaking that determination, we would be remiss in our duty to afford deference to the duly promulgated regulations of the Department of Labor by failing to consider the four factors laid out in the safe harbor regulation. We therefore hold that, to the extent plaintiff obtained coverage under the Chamber Plan through Prudential, it was not pursuant to a plan "maintained or established" by an employer and thus not part of an ERISA plan.

We find that, whether plaintiff's coverage was maintained pursuant to her relationship with Prudential or through her own membership in the Chamber, that coverage was not part of an ERISA plan. Her claims therefore were not preempted by ERISA, the district court had no subject-matter jurisdiction, and plaintiff's motion to remand was improperly denied.

### CONCLUSION

Because plaintiff's claims did not relate to an ERISA plan, we hold that the dis-

---

**3.** Defendant does argue that the Chamber received "consideration" in the form of increased membership due to its making available the Chamber Plan to its members. Even if this qualifies as consideration under the

regulation, a contention we find rather doubtful, we have already rejected the notion that the Chamber can count as an "employer" for purposes of ERISA, and thus defendant's argument is irrelevant.

trict court lacked subject-matter jurisdiction over her complaint. We therefore reverse the judgment of the district court and remand with instructions to return this case to New York Supreme Court.