Robert EHRENSPECK, Plaintiff,

v.

SPEAR, LEEDS & KELLOGG, Spear, Leeds & Kellogg–Futures Division Long Term Disability Income Plan and First Unum Life Insurance Company, Defendants.

No. 03 Civ. 2733(TPG).

United States District Court, S.D. New York.

March 10, 2005.

Brian Joseph Burns, Gallagher, Harnett & Lagalante, L.L.P., New York, NY, Lauren Freeman-Bosworth, Michael John Dell, Kramer, Levin, Naftalis & Frankel, L.L.P., New York, NY, for Spear, Leeds & Kellogg, Spear, Leeds, * Kellogg-Futures Division Long Term Disability Income Plan.

Brian Joseph Burns, Louis Michael Lagalante, Gallagher, Harnett & Lagalante, LLP, New York, NY, for First Unum Life Ins. Co.

## *OPINION*

GRIESA, District Judge.

Plaintiff brought this action in New York State Supreme Court, County of New York, seeking disability benefits under a disability income plan that was administered by Spear, Leeds & Kellogg–Futures Division. Defendant First Unum removed to federal court, asserting federal question jurisdiction under the ERISA statute, 29 U.S.C. § 1001, *et seq.*, Defendants Spear, Leeds & Kellogg ("SLK") and Spear, Leeds & Kellogg–Futures Division Long Term Disability Income Plan have moved to remand.

The motion to remand is now granted.

### FACTS

*The History of the Insurance Plan*

First Unum issued the Group Long Term Disability insurance plan (the "Plan") to a company called T & S Commodities, effective June 1, 1985. The Plan originally offered coverage to the owners and employees of T & S and was non-contributory, meaning that T & S paid the entire premium on behalf of each participant. The Plan was amended seven times between its inception in 1985 and its termination in 2001. It is undisputed that the Plan covered employees at least until Au-

gust 1990. However, the parties dispute when the last non-broker employee was actually covered under the Plan.

In late August 1991, T & S requested that the Plan be amended to add brokers who clear through T & S onto the Plan. Any employees then covered under the Plan remained covered, since employees were not specifically excluded from eligibility. In September 1991, T & S requested that the Plan be amended to be 100% contributory, meaning that each participant would have to pay the entire premium for himself. First Unum made the requested amendments to the Plan in October 1991.

In May 1993, T & S advised First Unum by letter that its principals had entered into an agreement to become Special Limited Partners of Spear, Leeds & Kellogg. The letter also advised that as of June 1, 1993, the entire firm of T & S would be moved over to SLK to become the Futures Division of SLK. T & S therefore requested that the policy name be changed to Spear, Leeds & Kellogg Futures Division, but that all benefits and terms of the Plan remain the same. SLK did not acquire T & S, and T & S was not SLK's predecessor in interest. First Unum made the requested name change in July 1993. From that time until the policy lapsed in 2001, the only changes made to the plan were modifications to the calculation of monthly earnings and other non-material changes.

*Plaintiff's Claim for Benefits Under the Plan*

Ehrenspeck has been a futures trader since the 1970s. However, he did not clear his trades through SLK until April 1993, when he began clearing through SLK on behalf of himself and his employer, Tyspec Commodities. When SLK assumed control of the Plan by virtue of the July 1993 change of the policy name, it offered the Plan to brokers who used SLK to clear their trades. The Plan remained 100%

contributory. In the spring of 1997, Ehrenspeck made inquiries to the benefits department of SLK about the Plan. He subsequently agreed to be enrolled in the Plan, and authorized SLK to pay the premium with deductions taken from his SLK account. Between May 1997 and October 2000, SLK took these monthly deductions in the amount of the premium and paid them to First Unum.

In early September 1998, Ehrenspeck submitted a claim against the Plan for his alleged disability. The claim alleged that Ehrenspeck suffered angina attacks, dizziness, shortness of breath, and pain in his back, neck, and chest. Ehrenspeck's physician stated that those ailments caused a marked limitation in Ehrenspeck's functional capacity, and that Ehrenspeck had been unable to work since October 1997.

On September 3, 1999 First Unum requested additional information from Ehrenspeck and SLK, including information about Ehrenspeck's earnings, information about Ehrenspeck's date of hire, and Ehrenspeck's tax returns from 1996, 1997, and 1998. On October 19, 1999 First Unum sent Ehrenspeck a letter denying Ehrenspeck's claim and closing the file because of Ehrenspeck's failure to provide proof of his disability within 14 days of First Unum's request for that information. Ehrenspeck alleges that he timely provided the requested documentation.

In October 2000, First Unum completed a review of its denial of coverage and determined that its decision was appropriate because Ehrenspeck had failed to provide Evidence of Insurability at the time he enrolled in the Plan. First Unum found that since Ehrenspeck had been improperly enrolled in the Plan, he was not eligible for coverage. After exhausting all the administrative remedies available under the Plan, Ehrenspeck sued SLK in April 2001.

## Procedural History

Ehrenspeck first brought suit against SLK in federal court in April 2001. The complaint in *Ehrenspeck v. Spear, Leeds & Kellogg, et al.*, 01 Civ. 3031(RLC), alleged seven causes of action: one alleged ERISA violation and six various claims under state law. SLK moved to dismiss that action for lack of subject matter jurisdiction on the grounds that the Plan was not governed by ERISA. Ehrenspeck did not oppose that motion, and instead chose to voluntarily dismiss that action without prejudice.

Ehrenspeck filed the current action in the Supreme Court of the State of New York, County of New York, in January 2002. First Unum removed the action to federal court, asserting federal question jurisdiction under ERISA. SLK now moves to remand the action back to the state court.

## DISCUSSION

■■■ A cause of action originally filed in state court may be removed by the defendant when "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. Where removal is predicated upon federal question jurisdiction, the well-pleaded complaint rule governs. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). When the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by "competent proof." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979). The district court is authorized to remand the case if the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

■■■ Civil suits by participants or beneficiaries to recover benefits under an ERISA plan can be brought only under the civil enforcement provision of ERISA. *See* 29 U.S.C. §§ 1132(a), 1144(a). The Supreme Court has held that ERISA has complete preemption effect. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Therefore, assertion of ERISA preemption permits removal of an action even when the complaint pleads only state law claims. In order to establish federal jurisdiction under ERISA, a party must show that the employer has established an employee welfare benefit plan as defined by the ERISA statute. *Dennis v. RSL COM U.S.A., Inc.*, 97 Civ. 5013(HB), 1998 WL 409720, at *2 (S.D.N.Y. July 21, 1998).

29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" or a "welfare plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, find, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

This definition has been narrowed further by regulations promulgated by the Department of Labor pursuant to its authority under 29 U.S.C. § 1135. Those regulations are intended to "clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan' ... by identifying certain practices which do not constitute employee welfare benefit plans." 29 C.F.R. § 2510.3–1(a)(1). The "safe harbor" regulation excludes certain group insurance plans from the definition

of employee welfare benefit plan when the following four conditions are met:

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j). Group health insurance programs that meet each of these four criteria are excluded from ERISA coverage.

The leading precedent from the Second Circuit Court of Appeals is *Grimo v. Blue Cross/Blue Shield, of Vermont*, 34 F.3d 148 (2d Cir.1994). In *Grimo*, plaintiff's deceased wife had a health insurance policy with Blue Cross. After defendant denied coverage of certain medical expenses incurred by plaintiff's wife, plaintiff filed a complaint in state court asserting six state law claims against defendant. Defendant removed the case to the district court on the grounds that the policy was governed by ERISA. Plaintiff moved to remand the case to state court, but that motion was denied. On appeal, the Court of Appeals vacated the district court's denial of Grimo's motion to remand the case to state court.

The district court denied the motion to remand because it found that Grimo's poli-cy was part of an "employee welfare benefit plan." The alleged plan had been established by Grimo's employer, and, at the time of the dispute, the plan was 100% contributory. However, some evidence was presented that at some earlier time the employer had paid some of the employees' premiums. The Court of Appeals held that the factual record was too uncertain to support a conclusion that the alleged plan fell outside the safe harbor regulation or that it was an "employee welfare benefit plan" under Section 1002(1).

The Court of Appeals rejected defendant's argument that an employer's contribution "in any amount to any of its employees' costs of insurance at any time is enough to deprive an employer foreveraft-er of the safe harbor of the DOL regulations." *Grimo*, 34 F.3d at 152. The Court held that the regulation's use of the present tense strongly suggested that past payments do not forever preclude application of the safe harbor provision.

The Court of Appeals also noted that "where the employer has made a decision not to fund the plan for the indefinite future and has made no contributions during the period in which the triggering event may have implicated the policy's coverage, a past contribution alone does not indicate that an ERISA plan has been maintained." *Grimo*, 34 F.3d at 152. The Court explicitly stated that an employer contribution made in the past does not preclude application of the safe harbor provision, nor does it demonstrate that an employer has 'established or maintained' the plan under 29 U.S.C. § 1002(1).

*The Present Case*

■ In this case, First Unum bears the burden of showing that the Plan meets the definition of an "employee welfare benefit plan" under 29 U.S.C. § 1002(1), as well as the burden of showing that the safe harbor provision of 29 C.F.R. § 2510.3–1(a)(1) is

not applicable. First Unum has not borne either burden.

First Unum has not shown that SLK maintained the Plan within the meaning of 29 U.S.C. § 1002(1). There is no dispute that T & S established the Plan an employee welfare benefit plan under ERISA. However, the Plan has been 100% contributory since October 1991, well before SLK assumed control of the Plan from T & S. There is no evidence that SLK has ever made any contributions to the Plan, or that any employee of SLK has ever been covered under the Plan.

At the oral argument held on August 26, 2004, First Unum's attorney stated that information had been obtained that at least one employee had been covered under the Plan until 1994. The Court therefore allowed the parties to supplement the record. First Unum submitted a sworn affidavit by Donna Scala, a former employee of SLK whose duties included maintaining the policy at issue. Scala states:

> To the best of my recollection, employees of T & S, and, later, SLK, remained covered by the SLK policy until approximately one year after T & S became SLK–Futures Division.

Scala also submitted a document entitled "Long Term Disability Employee Listing" dated March 1, 1994 as Exhibit H to her affidavit. The document appears to contain a list of participants in the First Unum policy at that time. However, neither Scala nor any other employee of SLK is listed: the document shows that the policy only covered broker/traders at that time. This evidence is insufficient to support removal on the grounds that the Plan was maintained as an employee welfare benefit plan by SLK.

■ Even if the Plan is an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1), First Unum has not shown that the Plan is outside the safe harbor provision. The record is clear that SLK never made any contributions to the Plan. It is also clear that participation in the Plan was completely voluntary.

First Unum argues that SLK's actions while administering the Plan constitute an endorsement. First Unum apparently relies on a letter sent from SLK to First Unum in 1995 seeking clarification of payroll deductions in certain instances. Such a ministerial request is hardly an endorsement. The evidence presented by First Unum does not establish that SLK endorsed the Plan.

First Unum also argues that SLK received compensation for its ministerial role because the availability of the Plan was intended to engender goodwill among futures traders, who would then clear their trades through SLK. However, the safe harbor provision refers to a concrete and direct benefit similar to cash, rather than some vague potential benefit in attracting customers. *See Marcella v. Capital Dist. Physicians' Health Plan*, 293 F.3d 42, 50 n. 3 (2d Cir.2002) (it is "doubtful" that a possible increase in membership due to the making available of a plan is compensation for purposes of the safe harbor provision.)

Plaintiff has not established that the plan falls outside the "safe harbor" provision. 29 C.F.R. § 2510.3–1(j) (2004); *Grimo*, 34 F.3d at 152.

## CONCLUSION

The motion for remand is granted, and the case is remanded to New York State Supreme Court, County of New York.

SO ORDERED.